# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| MAURICE SPORTING GOODS OF DELAWARE, INC., et al.,[1] | Case No. 17-12481 (CSS) |
|  | Jointly Administered |
| Debtors. | **Objection Deadline: January 2, 2019 at 4:00 p.m. (ET)**<br>**Hearing Date: January 31, 2019 at 1:00 p.m. (ET)** |

## DEBTORS' FOURTH MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND SOLICITATION OF ACCEPTANCES THEREOF

Maurice Sporting Goods of Delaware, Inc. (formerly known as Maurice Sporting Goods, Inc.) and its above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), further extending the Exclusive Periods (as defined below) for the filing of a chapter 11 plan and solicitation of acceptances thereof in these chapter 11 cases (the "Chapter 11 Cases"), and respectfully represent as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order").

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Maurice Sporting Goods of Delaware, Inc. (f/k/a Maurice Sporting Goods, Inc.) (3399); OLDCO DOC, Inc. (f/k/a Danielson Outdoors Company, Inc.) (0840); South Bend Sporting Goods, Inc. (6658); Triple Crown Holdings, Inc. (1847); and OLDCO MA, Inc. (f/k/a Matzuo America, Inc.) (4950). The mailing address for the Debtors is 1910 Techny Road, Northbrook, Illinois 60065.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9006-2.

**GENERAL BACKGROUND**

4. On November 20, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue managing their properties and operating their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. An official committee of unsecured creditors (the "Committee") was appointed on November 28, 2017.

5. Additional information about the Debtors' business and the events leading to the commencement of these chapter 11 cases can be found in *the Declaration of Patrick J. O'Malley in Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No.2], which is incorporated herein by reference.

**SPECIFIC BACKGROUND**

6. The initial focus of these Chapter 11 Cases was to facilitate an orderly sale of substantially all of the Debtors' assets as a going concern following a fair and robust marketing and sale process.

7. Accordingly, on November 21, 2017, the Debtors filed that certain *Motion of the Debtors for Orders: (A) (I) Approving Sale Procedures; (II) Approving Stalking Horse Bidding Protections; (III) Scheduling A Hearing to Consider Sale Of Debtors' Assets; (IV) Approving Form and Manner of Notice Thereof; and (V) Granting Related Relief; and (B) (I) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; And (IV) Granting Related Relief* [Docket No. 39] (the "Sale and Bidding Procedures Motion").

8. On December 28, 2017, the Court held a hearing (the "Sale Hearing") to consider the sale-related relief requested in the Sale and Bidding Procedures Motion and, at the conclusion thereof, entered an order (the "Sale Order") [Docket No. 227] approving the sale of substantially all of the Debtors' assets (the "Sale") to an affiliate of Middleton Management Company, Inc. (the "Purchaser"), pursuant to that certain Asset Purchase Agreement, dated as of December 7, 2017 (the "APA"), and approving and authorizing the Debtors to enter into that certain *Transition Services Agreement* with the Purchaser (the "Transition Services Agreement"), a form of which was attached to the Sale Order.

9. The Debtors closed the Sale on December 29, 2017. Upon closing, the Transition Services Agreement took effect, and the Purchaser began facilitating the sale of the Debtors' remaining inventory in accordance with the APA and Sale Order, which sales only

recently concluded (and for which the Debtors are still collecting receivables from the Purchaser). In addition to its role overseeing these sales for their estates and providing limited transition services in connection with these sales and the transition of their business (which have now all concluded), the Debtors are now in the process of winding down their estates, including through the reconciliation of claims against their estates and the formulation of a potential liquidating plan for the distribution of the proceeds generated by the Sale.

## RELIEF REQUESTED

10. By this Motion, the Debtors request entry of an order further extending the periods within which only the Debtors may file a chapter 11 plan and solicit acceptances thereof by approximately ninety (90) days each, pursuant to section 1121(d)(1) of the Bankruptcy Code. Unless extended, the Debtors' Plan Period and Solicitation Period (each as defined below) will expire on December 17, 2018[2] and February 12, 2019, respectively. The Debtors seek to extend the Plan Period and Solicitation Period by approximately ninety (90) days each, through and including March 18, 2019 and May 13, 2019, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods (as defined below), as may be appropriate under the circumstances. This Motion is the Debtors' fourth request to extend the Exclusive Periods.

## BASIS FOR REQUESTED RELIEF

11. Section 1121(b) of the Bankruptcy Code provides for an initial period of one hundred and twenty (120) days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Plan Period"). 11 U.S.C. § 1121(b). If a debtor files a plan during this Plan Period, section 1121(c)(3) of the

---

[2] Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the current Exclusive Periods shall automatically extend the Exclusive Periods until the Court acts on the Motion without the necessity for entry of a bridge order.

01:23969682.1

4

Bankruptcy Code provides a debtor with an additional sixty (60) days following the expiration of such Plan Period (or 180 days following the commencement of the case) to solicit acceptances of the plan without completing plan filings (the "Solicitation Period," and together with the Plan Period, the "Exclusive Periods"). 11 U.S.C. § 1121(c)(3). Section 1121(d) permits the Court to extend the Exclusive Periods for "cause." For the reasons set forth herein, "cause" exists to further extend the Exclusive Periods, which the Court previously extended 90 days each by order dated April 2, 2018 [Docket No. 342] approving the *Debtors' Motion for Entry of an Order, Pursuant to Section 1121(d) of the Bankruptcy Code, Extending the Exclusive Periods for the Filing of a Chapter 11 Plan and Solicitation of Acceptances Thereof* [Docket No. 320] (the "First Extension Motion"), by order dated July 5, 2018 [Docket No. 427] approving the *Debtors' Second Motion for Entry of an Order, Pursuant to Section 1121(d) of the Bankruptcy Code, Extending the Exclusive Periods for the Filing of a Chapter 11 Plan and Solicitation of Acceptances Thereof* [Docket No. 402] (the "Second Extension Motion") and by order dated October 9, 2018 [Docket No. 506] approving the *Debtors' Third Motion for Entry of an Order, Pursuant to Section 1121(d) of the Bankruptcy Code, Extending the Exclusive Periods for the Filing of a Chapter 11 Plan and Solicitation of Acceptances Thereof* [Docket No. 486].

**A.    Section 1121(d) of the Bankruptcy Code Permits
the Court to Extend the Exclusive Periods "For Cause"**

12.    The Exclusive Periods are designed to provide debtors with a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan, without disruption to the administration of the estate that may result from the filing of competing plans by non-debtor parties. To this end, where the Exclusive Periods prove to be unfeasible timeframes, section 1121(d) of the Bankruptcy Code allows the Court to extend such Exclusive Periods for

cause. 11 U.S.C. § 1121(d).[3] Although the Bankruptcy Code does not define the term "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. REP. NO. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

13. Congress built flexibility into section 1121 of the Bankruptcy Code to give a debtor sufficient opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan with its creditors. *In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D. N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297–98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

14. In making the determination to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including:

    (a)    The size and complexity of the debtor's case;

    (b)    The necessity of sufficient time to negotiate and prepare adequate information;

    (c)    The existence of good-faith progress towards reorganization;

    (d)    Whether the debtor is paying its debts as they become due;

---

[3] Pursuant to section 1121(d)(1) of the Bankruptcy Code, the Plan Period may not be extended beyond a date that is eighteen (18) months after the commencement of a chapter 11 case. 11 U.S.C. § 1121(d)(1). Pursuant to section 1121(d)(2), the Solicitation Period may not be extended beyond a date that is twenty (20) months after the commencement of a chapter 11 case. 11 U.S.C. § 1121(d)(2).

      (e)      Whether the debtor has made progress negotiating with creditors;

      (f)      The length of time a case has been pending;

      (g)      Whether the debtor is seeking an extension to pressure creditors; and

      (h)      Whether or not unresolved contingencies exist.

*In re Cent. Jersey Airport Servs., LLC*, 228 B.R. 176, 184 (Bankr. D.N.J. 2002) (citations omitted); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citing to most of the factors listed above in determining whether to extend the exclusive periods); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed "cause" to extend its exclusive period based upon certain of above-quoted factors).

15. The facts and circumstances of these Chapter 11 Cases justify further extending the Exclusive Periods to provide the Debtors with an unimpeded opportunity to confirm a chapter 11 plan with minimal interference.

**B.**    **Cause Exists for an Extension of the Exclusive Periods in these Chapter 11 Cases**

16. The Debtors have been operating under the protection of chapter 11 for approximately one year, during which time they have worked extensively with the Committee and other parties in interest to achieve significant progress in these Chapter 11 Cases, most prominently the Court approval, and closing, of the going-concern Sale of the Debtors' business to the Purchaser for up to $39 million (with the exact consideration dependent on certain post-closing inventory sales approved thereby, which only recently concluded), plus the assumption of certain liabilities. The Debtors have and will continue to work diligently in an effort to preserve and maximize the value of their estates for the benefit of their creditors and other parties in interest.

17. Since the filing of the Third Extension Motion, the Debtors have continued to wind-down their estates and set the stage for a chapter 11 plan of liquidation by, among other things:

(1) Finalizing the post-closing inventory sales contemplated by the Sale with the Purchaser and the Debtors' lenders (subject to ongoing receivables collection), and overseeing reconciliation of the same on behalf of the Debtors' estates;

(2) Engaging in ongoing negotiations for an updated wind-down budget with the Debtors' lenders;

(3) Obtaining Court approval of certain administrative, priority and secured claims filed against the Debtors' estates;

(4) Reviewing and analyzing the remaining administrative, priority and secured claims filed against the Debtors' estates, including certain unliquidated claims, not only to ensure an accurate claims register, but also for the Debtors (or any party) to determine whether a chapter 11 plan that observes the absolute priority rule is viable in these Chapter 11 Cases; and

(5) Working with the Committee and the Debtors' lenders to develop a strategy for concluding these Chapter 11 Cases that enjoys the support of the Committee and the Debtors' lenders.

18. The aforementioned tasks further the Debtors' goals in these Chapter 11 Cases by, among other things, determining the appropriate universe of potential claims against their estates and setting the stage for a potential viable plan process. In light of the Debtors' accomplishments thus far, and viewed in light of the various factors considered by courts in determining whether "cause" exists for an extension of the Exclusive Periods, the Debtors believe that each of the factors relevant to these Chapter 11 Cases weighs heavily in favor of the relief requested herein.

**C.** **The Relevant Factors Favor Extending the Exclusive Periods**

    **(i)** **The Size, Complexity, and Duration of these Chapter 11 Cases**

19. The Debtors' Chapter 11 Cases are sufficiently large and complex to warrant the requested extension of the Exclusive Periods. The Chapter 11 Cases involve five (5) Debtors with business operations that were located in the United States, Canada, and Asia, and creditors located throughout the globe. In the time since filing the Chapter 11 Cases, the Debtors have conducted a Sale process culminating in the closing of the Sale of substantially all of the Debtors' assets to the Purchaser, have engaged in an analysis of claims and numerous discussions with the Committee to set the stage for a successful chapter 11 plan of liquidation, have successfully prosecuted certain claims objections that are necessary to propose a viable plan, and are preparing objections with respect to other objectionable administrative, priority and secured claims of equal import. The complexity of the issues addressed and the time, effort and planning required to achieve these results simply cannot be overstated.

**(ii)    Good Faith Progress Made in these Chapter 11 Cases**

20. The Debtors have made significant and material progress in the Chapter 11 Cases, culminating, to date, in the approval of the Sale on a fully consensual basis, the subsequent closing of the transaction and conclusion of post-closing contingent inventory sales contemplated by the Sale (subject to ongoing receivables collection), the analysis of the administrative, priority and secured claims filed in these Chapter 11 Cases and the filing of objections to certain asserted administrative, priority and secured claims with additional objections in process. Accordingly, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

**(iii)   The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information**

21. In the initial months of these Chapter 11 Cases, the Debtors and their professionals focused much of their time, energy, and resources on smoothly transitioning into

chapter 11 and conducting a successful Sale process. To that end, the Debtors prepared and prosecuted numerous motions for first and second day relief, as well as prepared and filed their Schedules and Statements and required operating reports. In addition, the Debtors and their professionals focused substantial time and resources on conducting a robust Sale process and, ultimately, closing the Court-approved Sale to the Purchaser. More recently, the Debtors have been focused on an analysis of the claims filed against them in these Chapter 11 Cases, some of which presented complex issues of international law, and filing objections to certain of these claims necessary to facilitate a viable plan of liquidation. The Debtors believe that, in light of the progress that they have made in these Chapter 11 Cases, and their demonstrated efforts to work cooperatively the Committee and the U.S. Trustee during these Chapter 11 Cases, it is reasonable and appropriate that the Debtors be granted additional time to negotiate and finalize a chapter 11 plan. Accordingly, the Debtors submit that this factor weighs in favor of allowing the Debtors to extend the Exclusive Periods.

### (iv) The Debtors are Paying Their Debts as They Come Due

22.     The requested extension of the Exclusive Periods will not prejudice the legitimate interests of postpetition creditors, as the Debtors continue to make timely payments on their undisputed postpetition obligations (other than occasional inadvertent delays or errors). As such, this factor also weighs in favor of allowing the Debtors to extend the Exclusive Periods.

### (v) The Debtors are Not Seeking an Extension to Pressure Creditors

23.     The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods. The Debtors believe that they have worked diligently over the past ten months to maximize the value of their assets for all stakeholders, and require the extension

sought by this Motion in order to exit chapter 11 in an orderly and efficient manner. The Debtors are not seeking an extension to pressure creditors or other parties in interest.

    **(vi)**     **Termination of the Debtors' Exclusive Periods Would Adversely Impact these Chapter 11 Cases**

24. Termination of the Debtors' Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize the value of these estates and the progress of these Chapter 11 Cases. In effect, if this Court were to deny the Debtors' request for an extension of the Exclusive Periods, any party in interest would be free to propose a chapter 11 plan for the Debtors. Such a ruling would foster a chaotic environment with no central focus and likely cause substantial, if not irreparable, harm to the Debtors' efforts to preserve and maximize the value of their estates.

25. Based upon the foregoing, the Debtors respectfully submit that cause exists to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. Specifically, the Debtors request that the Plan Period and Solicitation Period be extended through and including March 18, 2019 and May 13, 2019, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate under the circumstances.

## NOTICE

26. Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) counsel to the Committee; (v) counsel to the Debtors' prepetition and postpetition lenders; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Order and (b) grant such other and further relief as the Court may deem just and proper.

Dated: December 17, 2018  YOUNG CONAWAY STARGATT & TAYLOR, LLP
Wilmington, Delaware

/s/ Justin H. Rucki
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Justin H. Rucki (No. 5304)
Ashley E. Jacobs (No. 5635)
Tara C. Pakrouh (No. 6192)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*