**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MAURICE SPORTING GOODS OF DELAWARE, INC., et al.,[1] | Case No. 17-12481 (KBO) |
| Debtors. | Jointly Administered |
|  | **Hearing Date: April 23, 2020 at 10:00 a.m. (ET)** **Objection Deadline: March 19, 2020 at 4:00 p.m. (ET)** |

**JOINT MOTION FOR ENTRY OF (I) AN ORDER (A) CONDITIONALLY
APPROVING DISMISSAL AND ESTABLISHING
PROCEDURES FOR DISMISSAL OF THE DEBTORS' CHAPTER 11 CASES
AND (B) APPROVING THE FORM OF NOTICE THEREOF; AND
(II) INITIAL AND FINAL ORDERS DISMISSING THE DEBTORS'
CHAPTER 11 CASES AND GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (the "**Debtors**") and the Official

Committee of Unsecured Creditors of the Debtors (the "**Committee**," and collectively with the

Debtors, the "**Movants**"), by and through their undersigned counsel, hereby submit this motion

(the "**Motion**") for the entry of: (I) an order, substantially in the form attached hereto as **Exhibit**

**A** (the "**Procedures Order**"), (A) conditionally approving dismissal and establishing procedures

for dismissal of the Debtors' chapter 11 cases and (B) approving the form of notice thereof; and

(II) initial and final orders, substantially in the forms attached hereto as **Exhibit B** (the "**Initial**

**Order**") and **Exhibit C** (the "**Final Dismissal Order**" and together with the Procedures Order

and the Initial Order, the "**Proposed Dismissal Orders**"), pursuant to sections 105(a), 305, 349,

363(b)(1), 554(a), and 1112(b) of title 11 of the United States Code (the "**Bankruptcy Code**"),

rules 1017, 2002, and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

---

[1]     The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Maurice Sporting Goods of Delaware, Inc. (3399); OLDCO DOC, Inc. (f/k/a Danielson Outdoors Company, Inc.) (0840); South Bend Sporting Goods, Inc. (6658); Triple Crown Holdings, Inc. (1847); and OLDCO MA, Inc. (f/k/a Matzuo America, Inc.) (4950). The mailing address for the Debtors is c/o Development Specialists, Inc., 10 S. LaSalle Street, Suite 3300, Chicago, Illinois 60603.

**Rules**") and rule 1017-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (A) dismissing the Debtors' chapter 11 cases; and (B) granting related relief, including, without limitation, (i) authorizing, but not directing, the Debtors to abandon and destroy any and all of the books and records currently maintained by the Debtors (the "**Books and Records**"); (ii) providing for limited exculpation for the Debtors, the Committee, and their respective professionals; (iii) authorizing the Debtors to take steps to effect a dissolution as set forth in the Final Dismissal Order; (iv) approving procedures for filing and approving final fee applications and providing for payment of approved professional and U.S. Trustee (as defined below) fees; and (v) approving the procedures for distribution of the GUC Carve-Out (as defined below).  In support of the Motion, the Movants respectfully represent as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are sections 105(a), 305, 349, 363(b)(1), 554(a), and 1112(b) of the Bankruptcy Code, Bankruptcy Rules 1017, 2002, and 6007, and Local Rule 1017-2.

## GENERAL BACKGROUND

3.      On November 20, 2017 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States

Bankruptcy Court for the District of Delaware (the "**Court**"), commencing the above-captioned

chapter 11 cases (the "**Chapter 11 Cases**").  The Debtors continue to operate their businesses

and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.

4.      On November 21, 2017, the Court entered an order [Docket No. 24] authorizing

the joint administration and procedural consolidation of these Chapter 11 Cases pursuant to

Bankruptcy Rule 1015(b).

5.      On November 28, 2017, the United States Trustee for the District of Delaware

(the "**U.S. Trustee**") appointed the Committee pursuant to section 1102 of the Bankruptcy Code

[Docket No. 52].  No request for the appointment of a trustee or examiner has been made in these

Chapter 11 Cases.

6.      Additional information about the Debtors' business and the events leading to the

commencement of these Chapter 11 Cases can be found in the *Declaration of Patrick J.*

*O'Malley in Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 2],

which is incorporated herein by reference.

## SPECIFIC BACKGROUND

**A.      The Sale of Substantially All of the Debtors' Assets**

7.      On November 21, 2017, the Debtors filed a motion [Docket No. 39], pursuant to

which the Debtors sought authority to sell substantially all of their operating assets (the "**Going**

**Concern Sale**") to the stalking horse bidder, an affiliate of Middleton Management Company,

Inc. (the "**Going Concern Purchaser**").  On December 12, 2017, the Court entered an order

approving bidding procedures and scheduling a hearing to consider approval of the Going

Concern Sale for December 28, 2017 [Docket No. 125].  On December 28, 2017, the Court

entered an order [Docket No. 227] (the "**Going Concern Sale Order**") approving the Going Concern Sale to the Going Concern Purchaser pursuant to an Asset Purchase Agreement, dated as of December 7, 2017 (the "**APA**"), and approving and authorizing the Debtors to enter into that certain Transition Services Agreement with the Going Concern Purchaser (the "**Transition Services Agreement**").

8.      On December 29, 2017, the Debtors closed the Going Concern Sale (the "**Sale Closing**").  Upon the Sale Closing, the Transition Services Agreement took effect and the Going Concern Purchaser began facilitating the sale of the Debtors' remaining inventory in accordance with the APA and the Going Concern Sale Order, which process has now concluded.  The Movants have since worked to wind down the Debtors' estates, including by reconciling claims against the estates and formulating an efficient exit from bankruptcy.

**B.      Committee Settlement and Final Administration of the Debtors' Estates**

9.      On December 13, 2017, the Committee filed the *Motion of the Official Committee of Unsecured Creditors, Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, for Entry of an Order Approving Stipulation between Official Committee of Unsecured Creditors and Debtors' Secured Lenders* [Docket No. 129] (the "**Settlement Motion**").  On December 28, 2017, the Court entered an order approving the Settlement Motion and the Stipulation between Official Committee of Unsecured Creditors and Debtors' Secured Lenders [Docket No 228] (the "**Stipulation**").

10.     The Stipulation provides for the payment of $1,000,000.00 (the "**GUC Carve-Out**") from the Debtors' secured lender, BMO Harris Bank, N.A. ("**BMO**"), as lender and agent for the Debtors' pre- and post-petition secured lenders, for the benefit of unsecured creditors in exchange for, among other things, the withdrawal of the Committee's objection to

the Going Concern Sale, which allowed the sale to move forward.  Stipulation, ¶ 4.  The Stipulation specifically excludes insiders of the Debtors from receiving any distributions with respect to the GUC Carve-Out.  *Id.*  Further, BMO agreed to waive any deficiency claim with respect to the GUC Carve-Out.  *Id.* ¶ 5.

11.    Given that unsecured creditors (the Committee's constituents) are the remaining beneficiaries of the wind-down of the estates, the Debtors and the Committee have agreed that the Committee will participate in finalizing the wind-down of the Debtors' Chapter 11 Cases.

**C.    The Claims Process**

12.    On January 8, 2018, the Court entered the *Order, Pursuant to Sections 501 and 502 of the Bankruptcy Code, Bankruptcy Rule 2002 and 3003(c)(3), and Local Rule 2002-1, (I) Establishing Bar Dates for Filing Proofs of Claim and Approving Form and (II) Approving the Form and Manner of Notice Thereof* [Docket No. 243], setting February 9, 2018 as the claims bar date for all non-governmental claims that arose prior to the Petition Date (the "**Claims Bar Date**").

13.    On February 25, 2019, the Court entered the *Order (I) Fixing Deadline for Filing Requests for Allowance of Administrative Expense Claims and (II) Designating Form and Manner of Notice Thereof* [Docket No. 582], setting April 3, 2019 as the deadline to file administrative expense claims that arose during the period from the Petition Date through and including February 27, 2019.  Thus, all parties that are entitled to file a proof of claim in these cases have had the ability to do so.

14.    In order to wind-down the Debtors' estates, the Movants reviewed and reconciled all claims that were filed asserting either administrative or priority treatment.  On October 11, 2019, the Committee filed *The Official Committee of Unsecured Creditors' First Omnibus*

*(Non-Substantive) Objection to Claims (Incorrectly Classified, Insufficient Documentation, Duplicative, and Amended and Superseded Claims)* [Docket No. 726] (the "**First Claim Objection**") and *The Official Committee of Unsecured Creditors' Second Omnibus (Non-Substantive) Objection to Claims (Late-Filed Claims)* [Docket No. 727] (the "**Second Claim Objection**").  On December 31, 2019, the Committee filed the *Official Committee of Unsecured Creditors' Third Omnibus (Non-Substantive) Objection to Claims (Improperly Classified, No Liability, Duplicative, and Amended and Superseded Claims*) [Docket No. 781] (the "**Third Claim Objection**").  On November 12, 2019, the Court entered an order granting the Second Claim Objection [Docket No. 752].  On January 2, 2020, the Court entered an order granting the First Claim Objection [Docket No. 782], as to certain claims.  On January 28, 2020, the Court entered an order granting the Third Claim Objection [Docket No. 796]. Contemporaneously herewith, the Committee is filing a fourth omnibus claims objection, to address certain remaining non-substantive claim objections.

15.    On September 13, 2019, the Committee filed the *Motion for Order Authorizing Payment of Allowed Administrative and Priority Unsecured Claims* [Docket No. 704].  On October 16, 2019, the Court entered the *Order Authorizing Payment of Allowed Administrative and Priority Unsecured Claims* [Docket No. 732] (the "**Payment Order**").  Pursuant to the Payment Order, the Debtors have paid all undisputed or resolved administrative and priority claims, other than professional fees and current quarterly fees payable to the U.S. Trustee.

16.    The only outstanding administrative or priority claims include professional fees and future U.S. Trustee quarterly fees.  All administrative and priority claims have been or will be paid in full.

D. **The Dismissal of the Debtors' Cases**

17.     The Movants have analyzed the most pragmatic and efficient way to conclude the Chapter 11 Cases.  After careful consideration of other alternatives, given the completion of the Going Concern Sale and the lack of any remaining assets to monetize for the benefit of unsecured creditors, the Debtors and the Committee have decided that dismissal is the most effective way to proceed.

18.     Reorganization of the Debtors in these cases is impracticable, if not impossible, given the Debtors' lack of assets, other than the GUC Carve-Out.[2] Accordingly, drafting and pursuing confirmation of a plan of reorganization is not feasible.

19.     Similarly, confirmation of a liquidating plan will be time-consuming, prohibitively expensive, and will substantially increase administrative costs.  The burdens of such a process far outweigh the benefits when the only substantive task remaining is distribution of the GUC Carve-Out.

20.     Finally, conversion of these cases to chapter 7 will merely add another layer of administrative expenses to the Debtors' estates without any benefit to unsecured creditors, potentially resulting in an administratively insolvent estate.

21.     Without funding for either a liquidating plan or chapter 7 administrative fees, such costs could only be addressed by looking to the GUC Carve-Out, which would severely impair any distribution to unsecured creditors in these cases, if not eliminate it entirely.

22.     In seeking approval of the dismissal of the Chapter 11 Cases pursuant to the Proposed Orders, the Debtors are mindful of the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 978 (2017) and the propriety of "structured" dismissals.  The

---

[2]     The Debtors also anticipate recovery of a federal tax refund of approximately four hundred thousand dollars ($400,000), which funds are subject to BMO's postpetition secured claim.

Movants submit that the distributions in the Proposed Orders comply with sections 507(a) and 726 of the Bankruptcy Code.

23.     Accordingly, based on these circumstances, the Committee and the Debtors concluded, in their business judgment, that dismissal makes the most practical and economic sense.

## **RELIEF REQUESTED**

24.     By this Motion, the Movants request entry of the Procedures Order immediately, (a) conditionally approving dismissal of the Chapter 11 Cases, subject to completion of the procedures proposed herein, (b) approving the form of notice (the "**Notice**") attached as Exhibit 1 to the Procedures Order, and (c) setting a further hearing date, if needed, to resolve any objections by creditors to the proposed distribution of the GUC Carve-Out.

25.     Upon entry of the Procedures Order, the Movants propose to serve the Notice upon all creditors of the Debtors, including insiders, thereby providing notice of the deadline by which creditors may object to the proposed distribution of the GUC Carve-Out and the balance of the relief sought in the Motion.   If no objections are timely filed, the Movants may file a certification of no objection or certification of counsel, as applicable, requesting entry of the Initial Order.  Following entry of the Initial Order, the Court may enter the Final Dismissal Order upon the filing of the Certification (defined below).   The Proposed Dismissal Orders collectively: (A) dismiss the Debtors' Chapter 11 cases and (B) grant related relief, including, without limitation, (i) authorizing the Debtors to abandon and destroy any and all of the books and records currently maintained by the Debtors; (ii) providing for limited exculpation for the Debtors, the Committee, and their respective professionals; (iii) authorizing the Debtors to take steps to effect a dissolution as set forth in the Final Dismissal Order; (iv) approving procedures

for filing and approving final fee applications and providing for payment of approved professional and U.S. Trustee fees; and (v) approving the proposed distribution of the GUC Carve-Out and procedures related thereto.

26.     The Movants submit that there is ample authority under the Bankruptcy Code and case law to grant the Motion and that the requested relief is justified and warranted under the circumstances of these Chapter 11 Cases.

## BASIS FOR RELIEF

**A.      Dismissal Is Appropriate under Section 1112(b) of the Bankruptcy Code**

27.     Pursuant to section 1112(b) of the Bankruptcy Code, a court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause."  11 U.S.C. § 1112(b); *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 978 (2017) (recognizing that a bankruptcy court may dismiss a Chapter 11 case under 11 U.S.C. § 1112(b)); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999).  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**") changed the statutory language with respect to conversion and dismissal from permissive to mandatory.  *See* H.R. Rep. No. 109-31(I), at 94, 2005 U.S.C.C.A.N. 88, 159 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances"); *see also In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (stating that the amendments to section 1112 limit the court's discretion to refuse to dismiss or convert a chapter 11 upon a finding of cause); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court

in deciding issues of conversion or dismissal such that this Court has no choice, and no discretion in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).").

28.    The amendments to section 1112 of the Bankruptcy Code limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause. *In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the interests of creditors and the estate."); *see also In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D.S.C. 2007).

29.    A determination of cause is made by the court on a case-by-case basis. *In re Albany Partners*, 749 F.2d at 674.    Section 1112(b) of the Bankruptcy Code provides a non-exhaustive list of sixteen factors that may amount to "cause" for dismissal. *See* 11 U.S.C. § 1112(b)(4); *Frieouf v. U.S.*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is non-exhaustive).    One statutory basis to dismiss a case is where a party in interest shows that (a) there has been a "loss" or "diminution" of value of the estate and (b) the debtor does not have a "reasonable likelihood of rehabilitation."    11 U.S.C. § 1112(b)(4)(A); *see also In re Photo Promotion Assocs., Inc.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985); *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) (finding that accumulation of real estate taxes impaired the value of the estate); *In re Midwest Props. of Shawano, LLC*, 442 B.R. 278, 286 (Bankr. D. Del. 2010) (dismissing Chapter 11 case pursuant to section 1112(b)(4)(A) as being in "the best interests of creditors and the estate"); *In re DCNC v. Carolina I, LLC*, 407 B.R. 651, 665 (Bankr. E.D. Pa 2009) (noting that "the inability to effectuate a plan, by itself, provides cause for dismissal or conversion of a Chapter 11 case").

30.     To demonstrate a continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation, a movant must establish: (i) that there has been a diminution of value of the estate; and (ii) the debtor does not have a "reasonable likelihood of rehabilitation."  *See, e.g., In re Citi-Toledo Partners*, 170 B.R. at 606 (citing *In re Photo Promotion Associates, Inc.*, 47 B.R. at 458). Under this two-fold inquiry, Movants must first demonstrate that there has been a diminution of value of the Debtors' estates. *See, e.g., In re Citi-Toledo Partners*, 170 B.R. at 606 (finding that accumulation of real estate taxes impaired the value of the estate).  Second, Movants must demonstrate that the Debtors have no "reasonable likelihood of rehabilitation." *See*, *e.g.*, *Clarkson v. Cooke Sales And Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (finding dismissal warranted where "the absence of financial data and certain sources of income for the [debtors] indicate[d] the absence of a reasonable likelihood of rehabilitation").

31.     This case satisfies the two-step inquiry.  *First*, by continuing in bankruptcy, the Debtors continue to incur additional administrative expenses (primarily professional fees and U.S. Trustee quarterly fees) beyond their ability to pay.  *Second*, the Debtors have liquidated substantially all of their assets in connection with the Going Concern Sale and no longer conduct business.  There are no further assets to distribute and a plan of liquidation would merely be a costly way to distribute the GUC Carve-Out.  If forced to draft and seek confirmation of a plan of liquidation, the Debtors' estates would likely end up administratively insolvent—or at least the GUC Carve-Out would be so depleted that unsecured creditors would receive limited benefit from a distribution.  The Debtors' estates therefore continue to diminish in value and the Debtors have no reasonable likelihood of rehabilitation.  Accordingly, cause exists to dismiss the Debtors' cases pursuant to section 1112(b)(4) of the Bankruptcy Code.

32.     Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must then evaluate whether dismissal is in the best interests of creditors and the estate. *See*, *e.g.*, *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert.").  A dismissal of a chapter 11 bankruptcy case meets the "best interests of creditors" test where a debtor has nothing to reorganize and the debtor's assets are fixed and liquidated.  *See Camden Ordinance Mfg. Co. of Ark., Inc. v. U.S. Tr. (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000) (noting reorganization to salvage a business which ceased business was unfeasible*)*; *Royal Tr. Bank, N.A. v. Brogdon Inv. Co. (In re Brogdon Inv. Co.*), 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 proceeding in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).  As set forth above, after the Going Concern Sale, the Debtors have no assets left to reorganize.

33.     In addition, courts have found that dismissal is in the "best interests of creditors" where an interested party, other than the debtor, supports dismissal.  *See Camden Ordinance*, 245 B.R. at 798; *In re Mazzocone*, 183 B.R. 402, 414 (Bankr. ED. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) (noting factors weighed more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7 where debtor and U.S. Trustee both favored dismissal).  Here, the Debtors, the Committee, and the Debtors' secured lenders all support the proposed dismissal.

34.     Cause also exists to dismiss the Chapter 11 Cases  pursuant to section 305(a) of the Bankruptcy Code, which provides that the "court, after notice and a hearing, may dismiss a case under this title , at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal . . . ."  11 U.S.C. § 305.  For the reasons set forth herein, dismissal is in

the best interests of creditors and therefore appropriate under section 305 of the Bankruptcy Code.  There is no longer a business to reorganize or assets to distribute, and thus no reason (or funds available) to pursue a plan of reorganization or liquidation.  Moreover, under the circumstances, conversion to chapter 7 would impose additional administrative costs with no corresponding benefit to the Debtors' creditors or their estates.

35.    In light of these factors, ample cause exists for, and the interests of the Debtors' creditors would be best served by, dismissal of the Debtors' Chapter 11 Cases.  As set forth above, the Debtors have sold substantially all of their assets pursuant to the Going Concern Sale. There are no proceeds of sale left, or other assets remaining, to distribute to creditors other than for payment of allowed professional fees, fees to the U.S. Trustee, and the GUC Carve-Out.  A plan would only result in increased administrative expenses, without any ability to pay such expenses without looking to the GUC Carve-Out. Additionally, conversion to chapter 7 would impose additional administrative costs with no corresponding benefit to creditors or the estates. Accordingly, dismissal is the best means to conclude these Chapter 11 Cases.

**B.    The Court Should Authorize the Debtors to Abandon and Destroy the Books and Records**

36.    Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, [a debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Additionally, Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  *Id.* at § 105(a).  Bankruptcy Rule 6007, meanwhile, provides that a debtor may abandon property of the estate by giving notice of the proposed abandonment to various parties, and allowing those parties to file an objection.  As one bankruptcy court has noted, "if a

trustee feels an asset is of inconsequential value and benefit to the estate or that it is 'burdensome

to the estate,' [she] may abandon it." *Reich v. Burke (In re Reich)*, 54 B.R. 995, 1003-04 (Bankr.

E.D. Mich. 1985).

37.    The Movants request, through entry of the Final Dismissal Order, that the Court,

pursuant to sections 105(a) and 554(a) of the Bankruptcy Code and Bankruptcy Rule 6007,

authorize, but not direct, the Debtors to abandon and destroy the Books and Records.   As

previously discussed, the Debtors have sold substantially all of their assets through the Going

Concern Sale, no longer have an operating business and have largely wound up their affairs.  The

Books and Records are of no value to the Debtors after dismissal of the Chapter 11 Cases, and

the Debtors' estate should not be forced to incur the costs necessarily associated with

maintaining and storing the Books and Records.

38.    The Movants further request that Epiq Bankruptcy Solutions, LLC ("**Epiq**") be

released from its responsibilities as the Debtors' claim agent, provided, however, that Epiq

complies with Local Rule 2002-1(f)(xii) by forwarding to the Clerk of Court an electronic

version of all imaged claims, uploading the creditor mailing list via CM/ECF, and docketing a

final claims register.

39.    Accordingly, the Movants submit that the relief requested herein with respect to

the Books and Records is necessary, prudent, and in the best interests of the Debtors' estates and

creditors, and should therefore be granted.

## C.    Binding Effect of Prior Stipulations, Settlements, Rulings, Orders, and Judgments

40.    The Movants request that all orders of this Court entered in the Chapter 11 Cases

remain in full force and effect and survive the dismissal of the Chapter 11 Cases.  Although

section 349 of the Bankruptcy Code contemplates that dismissal will typically reinstate the

pre-petition state of affairs by revesting property in the debtor and vacating orders and judgments of the bankruptcy court, a bankruptcy judge may "for cause, orde[r] otherwise." 11 U.S.C. § 349(b). "[T]his provision appears to be designed to give courts the flexibility to 'make the appropriate order to protect rights acquired in reliance on the bankruptcy case.'" *Jevic*, 137 S.Ct. at 984. Courts in this jurisdiction have regularly maintained the enforceability of orders, including those approving releases and settlements, after a dismissal, notwithstanding section 349 of the Bankruptcy Code. *See, e.g., In re Sunco Liquidation, Inc.*, No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) [D.I. 865] (giving continued effect to orders entered throughout the pendency of the chapter 11 cases); *In re Old Towing Co.*, Case No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017) [D.I. 381] (giving continued effect to 363 sale order and any releases, injunctions and successor liability provisions provided for in such sale); *In re TAH Windown, Inc.*, Case No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) [D.I. 408] (giving orders, releases, and injunctions continuing effect).

41.     The Movants submit that cause exists to allow all stipulations, settlements, rulings, orders, and judgments entered by the Court during these Chapter 11 Cases to be given continued effect, notwithstanding the requested dismissal. The Debtors have been in Chapter 11 for over two (2) years and have sought and obtained the Court's approval of numerous motions including, most significantly, the Going Concern Sale Motion. Unless the Court orders otherwise, section 349 of the Bankruptcy Code could unravel the effect of the orders entered in these cases. By allowing the orders of this Court to remain in full force and effect and survive dismissal, the Court will preserve the benefits of all parties' efforts and achievements in the Chapter 11 Cases, as it is the results obtained during the Chapter 11 Cases that now justify dismissal.

**D.      The Limited Exculpation Provisions in the Final Dismissal Order are Appropriate and Should be Approved**

42.      Limited exculpation, such as that sought in the Final Dismissal Order, is appropriate when it is fair, necessary, and supported by the factual record.  *See, e.g., Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 214 (3d Cir. 2000).  The Debtors, their officers, directors, and employees, and other estate professionals and fiduciaries (including the Committee) worked diligently throughout the Chapter 11 Cases to consummate the successful sale of the Debtors' remaining assets as a going concern and to otherwise wind down the Debtors' businesses for the benefit of creditors.  As a result of their efforts, the Exculpated Parties[3] have preserved numerous jobs, maintained valuable business and customer relationships, and provided the Debtors the ability to wind down their estates in an orderly and efficient manner.

43.      In consideration of those efforts, the Movants seek limited exculpation for the Exculpated Parties, who are limited to include only estate fiduciaries.  *Washington Mut.*, 442 B.R. at 350.  The exculpation provisions will protect the Exculpated Parties from liability for any actions taken (or omitted to be taken) in good faith, relating to or in connection with the Chapter 11 Cases, including the formulation and implementation of this Motion and the Initial Order and Final Dismissal Order.  Further, the proposed exculpation provisions expressly exclude liability for any acts of gross negligence or willful misconduct on the part of the Exculpated Parties. Courts in this jurisdiction have approved similar relief in the past.  *See, e.g.*, *In re Real Industry, Inc.*, No. 17-12464 (KJC) (Bankr. D. Del. Dec. 18, 2018) [Docket No. 1165] (approving dismissal order containing broad exculpation clause); *In re Golfsmith Int'l Holdings, Inc.*, No.

---

[3]      The "**Exculpated Parties**" are the Debtors, the Committee, and their respective present or former directors, officers, employees, partners, attorneys, consultants, advisors, and agents, as well as the Committee's members (in each case, acting in such capacities during the Chapter 11 Cases). *See* Final Dismissal Order, ¶ 9; *see also In re Washington Mut. Inc.*, 442 B.R. 314, 322, 350 (Bankr. D. Del. 2011).

16-12033 (LSS) (Bankr. D. Del. Jan. 24, 2018) [Docket No. 1246] (approving form of dismissal order containing broad releases); *In re City Sports, Inc.*, No. 15-12054 (KG) (Bankr. D. Del. Mar. 4, 2016) [Docket No. 647] (approving broad exculpation provision); *In re Coach Am Grp. Holdings Corp.*, No. 12-10010 (KG) (Bankr. D. Del. May 31, 2013) [Docket No. 1568] (approving consensual releases and broad exculpation).  Further, all creditors and other parties in interest in the Chapter 11 Cases will be provided with notice of, and an opportunity to object to, the proposed exculpation.  Movants therefore submit that the limited exculpation provisions in the Final Dismissal Order are appropriate and request that they be approved.

E.     **The Debtors should be Dissolved**

44.     Because the Debtors have sold substantially all of their assets and ceased operations, the Court is empowered by sections 105 and 363(b)(1) of the Bankruptcy Code and its general equitable powers to dissolve the Debtors.  *See, e.g.*, *Weir v. JMACK, Inc.*, No. 3263-CC, 2008 WL 4379592 at *2 (Del. Ch., decided Sept. 23, 2008) (granting dissolution of corporation by court order and stating that "[i]t is well settled that this Court, as a court of equity, has the power to order the dissolution" of a corporation).  Further, courts in this jurisdiction have previously approved the dissolution of debtors by court order in connection with the dismissal of a chapter 11 case.  *See, e.g.*, *In re Real Industry, Inc.*, No. 17-12464 (KJC) (Bankr. D. Del. Dec. 18, 2018) [Docket No. 1165]; *In re DirectBuy Holdings, Inc.*, No. 16-12435 (CSS) (Bankr. D. Del. Nov. 1, 2017) [Docket No. 776]; *In re Sunco Liquidation, Inc.*, No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) [Docket No. 865]; *In re TAH Windown, Inc.*, No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) [Docket No. 408]; *In re Hospitality Liquidation I, LLC*, No. 13-12740 (BLS) (Bankr. D. Del. Jan. 5, 2015) [Docket No. 447].

45.     Here, Movants respectfully submit that it is appropriate and necessary for the Court to dissolve the Debtors.  The Debtors have no further business to conduct or other purpose to remain active corporate entities in their jurisdictions, and absent their prompt dissolution, the Debtors may incur additional taxes and statutory fees owing to their continued corporate existence.  Accordingly, it is in the best interests of the Debtors' estates and creditors for the Debtors to dissolve as soon as practicable.  Upon the entry of the Final Dismissal Order, counsel to the Debtors will be authorized to file all documents necessary to evidence such dissolution in accordance with the applicable law of each Debtor's respective jurisdiction of formation.

F.      **Final Fee Applications**

46.     In connection with winding down the Debtors' estates and the dismissal of the Chapter 11 Cases, the Debtors seek the Court's approval of procedures for the final payment of professional fees and expenses incurred by professionals on behalf of the Debtors' estates throughout the Chapter 11 Cases.

47.     Specifically, Movants request that the Initial Order includes a provision scheduling a final omnibus fee hearing (the "**Final Fee Hearing**").  Movants further request that the Court require all professionals retained in these Chapter 11 Cases to file final requests for allowance and payment of all fees and expenses incurred during the Chapter 11 Cases (the "**Final Fee Applications**") not later than twenty-one (21) days prior to the Final Fee Hearing and that any objections to the Final Fee Applications be filed and served on counsel for the Committee and the Debtors and the applicable fee applicant by 4:00 p.m. (prevailing Eastern Time) seven (7) days prior to the Final Fee Hearing.

48.     Courts in this jurisdiction have granted similar relief in the context of dismissals. *See, e.g., In re The Wet Seal, LLC*, No. 17-10229 (CSS) (Bankr. D. Del. Mar. 19, 2019) [Docket

No. 1006]; *In re The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Feb. 1, 2019)

[Docket No. 1436]; *In re Quantum Foods, LLC*, No. 14-10318 (KJC) (Bankr. D. Del. Apr. 6,

2018) [Docket No. 1798]; *In re Sunco Liquidation, Inc.*, No. 17-10561 (KG) (Bankr. D. Del.

Aug. 18, 2017) [Docket No. 706].

### G.    Procedures for Distribution of the GUC Carve-Out

49.    Movants request that the Initial Order includes a provision for the Debtors, in

consultation with the Committee, to distribute the GUC Carve-Out pursuant to the following

procedures (the "**Distribution Procedures**"):

a.    Subject to subparagraph (b) below, the Debtors shall make payments to holders of allowed unsecured claims, in U.S. dollars[4] by check or wire-transfer in the amounts set forth on Exhibit 1 to the Initial Order (each, a "**Distribution**" and collectively, the "**Distributions**").

b.    The Debtors shall not make Distributions from the GUC Carve-Out to the following claim holders, notwithstanding that such entities might otherwise be considered to be a holder of an allowed unsecured claim:  (i) insiders of the Debtors who were expressly excluded from receiving distributions from the GUC Carve-Out pursuant to the Stipulation ("**Insiders**"); (ii) any holder of an unsecured claim to the extent that such Distribution would be less than $10.00 (the "**De Minimis Claimants**"); and (iii) any other party that failed to file a claim by the Claims Bar Date or that is not listed on Exhibit 1 to the Initial Order and was provided notice of this Motion, provided that all such Insiders and De Minimis Claimants shall receive notice of this Motion which expressly states that Insiders and De Minimis Claimants will not receive a Distribution and provides the threshold claim amount necessary to receive a Distribution (*i.e.*, a claim amount for which the resulting Distribution will exceed $10.00). A list of all De Minimis Claims is separately set forth on Exhibit 2 to the Initial Order.

c.    Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, distributions and deliveries of the Distributions shall be made at the address of each such claimant as set forth on the schedules filed with the

---

[4]    Certain claimants, designated with an asterisk on Exhibit 1 to the Initial Order, filed proofs of claim asserting amounts due in Canadian dollars.  For such claimants, the Movants have determined the amount of such claim, and the corresponding distribution amount, in U.S. dollars by application of the exchange rate of 0.78050, the historical exchange rate in effect on the Petition Date.  See https://www.exchange-rates.org/Rate/CAD/USD/11-20-2017 (last accessed February 19, 2020).

Bankruptcy Court, unless superseded by the address set forth on timely filed proof(s) of claim.

d.  If any Distribution to any claimant is returned to the Debtors as undeliverable or is otherwise not negotiated within ninety days after the Distributions are sent, such Distributions shall be deemed forfeited (the "**Forfeited Distributions**") and such claimant shall not be entitled to any recovery on account of its claim.  Nothing contained in the Proposed Orders shall require the Debtors to attempt to locate any claimant entitled to Distributions or that forfeits its right to Distributions.

e.  If, after ninety days, the aggregate amount of Forfeited Distributions is greater than $50,000.00, the Forfeited Distributions shall be re-distributed (other than to those that forfeited their rights to a Distribution) on a *pro rata* basis, subject to the limitations of subparagraph (b) above.

f.  In the event that the aggregate amount of the Forfeited Distributions is less than $50,000.00 and the Debtors (in consultation with the Committee) determine, in their reasonable business judgment, that a further Distribution would not make economic sense, the remainder of the Forfeited Distributions may be donated to the American Bankruptcy Institute Endowment Fund, a not-for-profit, non-religious organization dedicated to, among other things, promoting research and scholarship in the area of insolvency.

g.  The Debtors may require that certain claimants provide tax reporting information prior to making Distributions under subparagraph (a) above, in order to comply with applicable law.  Movants reserve the right to object to any claim to the extent requested tax reporting information is not provided.  The amounts otherwise distributable to any such disallowed claims shall be considered Forfeited Distributions and distributed in accordance with these Distribution Procedures.

50.    In light of the circumstances of these Chapter 11 Cases, Movants submit that the proposed Distribution Procedures are necessary and appropriate and should be approved in the Initial Order.

51.    Further, Movants request that the Notice be approved by the Court in the Procedures Order.  The Movants will serve the Notice to all creditors of the Debtors, including without limitation Insiders and holders of De Minimis Claims.  The Notice adequately informs all creditors: (a) that Exhibit 1 to the Initial Order contains the proposed distribution amounts that each creditor may be entitled to; (b) that holders of De Minimis Claims will not receive a

Distribution and identifying the threshold claim amount necessary to receive a Distribution and that Exhibit 2 to the Initial Order specifically identifies each holder of a De Minimis Claim that will not receive a Distribution; (c) that a free copy of the Motion and the Proposed Dismissal Orders may be obtained through the Debtors' claims agent's website or by contacting counsel for the Movants; and (d) that if the Court approves the Initial Order, the Debtors will make the Distributions without further notice or hearing.  Movants submit that the form of Notice provides as much or more information as that approved by this Court in similar dismissals, and as such is adequate and reasonable under the circumstances and should be approved.

**H.**        **Certification and Request for Entry of Dismissal Order**

52.        As soon as reasonably practicable following the payment of professional fees, U.S. Trustee fees, and the Distributions, Movants request that the Court dismiss the Chapter 11 Cases upon the filing of a certification (a "**Certification**") of counsel (with the consent of each of the Debtors, the Committee, and the U.S. Trustee) and requesting entry of the Final Dismissal Order substantially in the form attached hereto as **Exhibit C**.  The Certification will verify that: (i) all quarterly fees payable to the U.S. Trustee have been paid in full; (ii) fees and expenses of the professionals in the Chapter 11 Cases have been approved on a final basis and paid; and (iii) the GUC Carve-Out has been distributed in accordance with the provisions of the Initial Order.

**NOTICE**

53.        Notice of this Motion has been provided to (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) counsel to the Debtors' prepetition and postpetition lenders; (v) all parties requesting notice pursuant to Bankruptcy Rule 2002; and (vi) all creditors listed in Exhibit 1 and Exhibit 2 of the

Initial Order.   In light of the nature of the relief requested herein, the Movants submit that no other or further notice is necessary.

## CONCLUSION

**WHEREFORE**, the Movants respectfully request that the Court enter the Procedures Order and the Proposed Dismissal Orders as set forth herein, and grant such other and further relief as the Court deems just and proper under the circumstances.

Dated:  March 5, 2020

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Ashley E. Jacobs*_____
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Ashley E. Jacobs (No. 5635)
Tara C. Pakrouh (No. 6192)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors-in-Possession*

**SAUL EWING ARNSTEIN & LEHR LLP**

*/s/ Aaron S. Applebaum*_____
Aaron S. Applebaum (DE Bar No. 5587)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Fax: (302) 421-6813
aaron.applebaum@saul.com

*Counsel to the Official Committee of Unsecured Creditors of Maurice Sporting Goods, Inc. et al.*